## KERNGOOD v. DAVIS.

1. A testator, C., left property in trust for his daughter for life, with remainder to the heirs of her body, share and share alike. H., a son of this daughter, received from his father and mother, after his marriage, a large estate in lands and negroes (the latter being part of the C. estate), for the value of which he promised to account on the death of his parents, or either of them, if necessary, for purposes of equalization with his brothers and sisters. H. died, and then his mother, and judgments were obtained against the executrix of H. By a consent decree in a cause to which H.'s widow and children, his brothers and sisters, and these judgment creditors were parties, a plantation of H. was vested in his children, in satisfaction of their interest in the C. estate, and discharged from the lien of the judgments, and the said brothers and sisters were ordered to pay these judgments, which were thereupon marked satisfied as against H.'s estate. But this decree was not enrolled, nor was execution sent to the county in which was a plantation of the C. estate until many years afterwards, and meantime these brothers and sisters had mortgaged their interest in such plantation. *Held*, that this decree did not create a lien upon the interests of the brothers and sisters in the C. lands, until lodged in the county where the lands were, and this lien was therefore postponed to the lien of the intermediate mortgages.

2. But the evident scheme of the decree being an arrangement by which these parties took the interest of their brother's children in the C. lands and were to pay the judgments, the judgments not being paid were entitled to hold a lien upon such children's interest in said lands from the date of the decree.

3. The mortgagees were chargeable with notice that the interest of these infant co-tenants was not expressly transferred to the others, and that these others, the mortgagors, were directed to pay said judgments.

4. These children were entitled to share *per capita* with their uncles and aunts in the C. lands, but their interest having been treated in the consent decree as a share *per stirpes*, all parties are now bound to so accept it.

5. An informal covenant of warranty in a mortgage held to have been intended as a general warranty, and to operate as such.

6. A complaint for foreclosure alleged that a judgment of record had been paid. *Held*, that the court, under such allegation and the facts proved, and in order to settle the priorities of lien, might raise an estoppel against the assertion of such judgment.

7. A party holding a judgment lien on the interest of a co-tenant in a tract of land, joined with all the co-tenants in mortgaging this land, with covenants of general warranty. *Held*, that he was estopped from asserting his judgment lien as against this mortgage, but not as against intermediate mortgages.

Before COTHRAN, J., Sumter, October, 1883.

The facts of this case are stated in the opinion of this court. The Circuit decree was as follows:

This cause was noted in the calendar as heard at the October term of the Court of Common Pleas for Sumter county, and by agreement the argument was heard afterwards in Columbia, on November 14, 1883. The land described in the pleadings is under order of sale by a previous decree in the cause, and is advertised to be sold by the master of Sumter county on sales-day in December next, now nearly at hand. It was deemed expedient by the parties in interest to settle the conflicting claims for priority of liens with a view to promote a more favorable sale of the premises, and to facilitate this purpose the extraordinary hearing was had.

The case has been argued upon all sides with great zeal and ability, but the time is so short and the necessity of a speedy

decree is so much greater than for an elaborate one, that I shall undertake to do little more than give a brief history of the case and state the conclusions obtained, leaving it, in case the cause should go further, to the counsel in whose favor I have decreed to sustain my conclusions by the very able argument delivered at the hearing. The facts of the case extending over a period of seventy years (the testator R. L. Champion, under whose will the controversy arises, having died in 1813), would of themselves make a volume. It is enough barely to mention a few of the complications: litigation for nearly one-third of that time, death of parties, substitution of others, debtors insolvent, contention among creditors, a family settlement, a sale of the premises as forfeited to the state for taxes unpaid—all go to show the difficulty of unravelling, and perhaps the necessity of cutting, this Gordian knot.

The first question in the case involved the validity of a patent issued by the executive of the state to Mrs. Sarah E. DeSaussure for the land in controversy, known as *the Champion place*, in Sumter county, containing some 2,400 acres, and said to be very valuable. The land was first exposed to sale December 31, 1877, for taxes due for the year 1876, and for the want of a bid for the same, was not sold. There was no redemption of the premises, and finally, on the first Monday of September, 1879, the said land was offered for sale as land forfeited to the state and was bought for Mrs. Sarah E. DeSaussure by her attorney, the arrearages of taxes amounting to $545.18 paid, and a patent issued her by the governor of the state for the whole tract.

It was urged in behalf of the patentee that the exhibitions of the patent was proof of good and sufficient title, but unsuccessfully, and the patent was fiercely assailed by all the other parties in interest as the common enemy of all. After much contention it was suggested that if the holder of the patent would consent to assume the position of a trustee for the lien creditors, in the purchase made, and not insist upon the validity of her title, but agree to cancel the same, that the amount of money paid by her for the land at the tax sale, with interest, would be refunded to her. To this all parties agreed, and this matter is happily eliminated from the case.

The next question is, as to the priority of liens. The following is a list of those:

1. The Ellen Stewart claim. This was a sealed note of Eliza C. DeSaussure, A. B. DeSaussure, and J. M. Davis, for $500, dated July 13, 1874, payable January 1, thereafter, with interest from date, and after maturity at the rate of one per cent. per month. Mrs. Eliza C. DeSaussure gave to the payee a mortgage of her interest in the land in controversy, to secure payment of said note.

2. The Clyburn claim. A bond of M. L. Davis, S. A. Davis, John M. DeSaussure, jr., E. C. DeSaussure, and L. C. DeSaussure, to W. D. McDowell, receiver of the estate of Workman, dated January 28, 1875, conditioned for the payment of $3,500 on January 1, 1876, with interest from date at the rate of twelve per cent. per annum, payable annually until the whole be paid; indorsed (in the handwriting of J. M. Davis, and admitted by Mr. Hay to be correct) "$600 of this bond bears interest from the date of the bond, the balance $2,900 having been only paid over to-day, will bear interest from this date, March 16, 1875." A mortgage of the interest of all the obligors in the land in question was executed and delivered on the same day to secure the payment of said bond.

3. The Simonds claim. A bond of J. M. Davis, L. D. Davis, L. C. DeSaussure, Eliza C. DeSaussure, and A. B. DeSaussure, to Louis D. DeSaussure, dated April 25, 1876, conditioned for the payment of $2,086.24, with interest at the rate of twelve per cent. per annum, from January 1, 1875, payable annually until the whole amount of principal and interest is paid—the principal to be paid in two equal successive annual instalments, the first whereof is to be paid on or before January 1, 1877. Eliza C. Davis, Louisa D. Davis, and Lloyd C. DeSaussure at the same time executed and delivered to Louis D. DeSaussure a mortgage of all their interest in the said lands to secure the payment of said bond. This bond has been duly assigned and transferred to Andrew Simonds.

4. The Kerngood claim. A bond of John M. DeSaussure, sr., Louisa D. Davis, John M. DeSaussure, jr., Sallie D. Davis, Eliza C. DeSaussure, and Lloyd C. DeSaussure, dated May 27,

1877, conditioned for the payment to George Alden, on or before January 1, 1878, of the sum of $1,516.65, with interest from January 1, 1877, at seven per cent. per annum. All the obligors at the same time executed and delivered to the obligee a mortgage of their interest in the land in question to secure the payment of said bond. This bond was afterwards duly assigned and transferred to the plaintiff, Tobias Kerngood.

5. The claims of Witte Bros. These consist of sundry judgments obtained by James D. Matheson, James D. Kirkpatrick, administrator, Priscilla B. Perkins, executrix, and Mary E. Shaw, administratrix, against the estate of Henry W. DeSaussure, deceased. These by assignment all became the property of one Sanders, who in turn pledged them as security to Witte Bros., who present them here. As the main contention in the matter of priorities arises in regard to these claims, it is proper to define just here their true nature. Henry W. DeSaussure was the eldest son of the late John M. DeSaussure, who had intermarried many years ago with Eliza Hester Champion, daughter of Richard L. Champion, the devisor of the lands here in question. Henry W. DeSaussure was killed in one of the battles around Richmond, in June, 1862; at his death he left a widow and four children surviving.

After the close of the war, amid the wrecks of a large fortune, an effort was made to adjust his affairs. To this end, his widow and executrix, in behalf of herself and her infant children, filed a bill in equity on December 21, 1869, entitled for "injunction, dower, partition, to marshal assets, and for relief." Most of the parties to the proceedings now before the court were made defendants in that bill; amongst others the assignors, then the holders and owners, of the claims presented here by Witte Bros. The injunction sought by that proceeding was to stay the hands of these assignors then holding judgment against the executrix of the will of the said Henry W. DeSaussure. It was an *omnibus bill*, as its title imports, but in the latitude which is allowed in the matter of family settlements (for this was obviously such), no plea for multifariousness was interposed, and on November 14, 1870, Hon. S. W. Melton, then the presiding judge of the fifth

Circuit, made a decree in the cause, which was assented to by all parties to the suit.

By the fourth clause of the will of Richard L. Champion, who departed this life in the year 1813, he devised the land in question here to his daughter Eliza Hester, afterwards the wife of John M. DeSaussure, sr. (the mother of the said Henry W.), for life, with remainder to the heirs of her body living at the time of her death. She died in 1864, being predeceased by her son, Henry W. It was conceded in the consent decree of Judge Melton that the children of Henry W. were entitled to a share of the Champion land at the falling in of the life estate of their grandmother. The estate of Henry W. being insolvent, James M. Davis was appointed receiver of the same.

Besides the interest which Henry W.'s children had in the Champion lands as tenants in common with their uncles and aunts, their father was seized at the time of his death of other valuable lands in Kershaw county and of a house and lot in the town of Camden. It was manifestly the purpose of the family settlement already referred to, to save a home and farm for the widow and children of Henry W. DeSaussure. This appears from the terms of the decree of Judge Melton, and without encumbering this decree with the contents of that, I shall only cite the sixth paragraph:

"It is further ordered that the said James M. Davis, receiver as aforesaid, after applying the assets remaining in his hands necessary to make the payments of the said Mary R. DeSaussure, hereinbefore directed, do pay therefrom the costs of this suit (the same to be apportioned and charged to the parties liable therefor, as ascertained by the further orders of this court), and to apply the balance of said assets, when collected, to the payment of the demands of the other creditors of the estate of said Henry W. DeSaussure, deceased, *pro rata,* to wit, the said James D. Matheson, James D. Kirkpatrick, Priscilla B. Perkins, and Mary E. Shaw, and that the judgments at law upon the said claims be satisfied before the judgment creditors thereof receive any benefit from this decree. It is further ordered that the defendants, Mary Louisa Davis, Eliza C. DeSaussure, John M. DeSaussure, jr., Sarah Amelia Davis, and Lloyd C. DeSaus-

sure, do pay the said creditors, respectively, whatever may remain due to them on their said claims after the application thereto of the proceeds of the said assets in the hands of the said James M. Davis, receiver aforesaid, as hereinbefore directed.''

Paragraph 7 in terms authorizes the remaindermen under the will of Richard L. Champion, who are adults, and John M. DeSaussure, sr., the father of the infant, Lloyd C., whenever they may deem it advisable, to sell the land and personalty to pass under the said will, &c. These claimants, or their assignees, were parties to that proceeding, and assented to it. The right to sell absolutely certainly includes the right to make a conditional sale; the greater including the less.

The decree filed in November, 1870, was never enrolled. It is worthy of remark also that it was made after the adoption of the code of procedure, and if it had been enrolled, would not *ipso facto* have become a lien upon land. In the meantime, the several mortgages exhibited here were executed by the defendants of their interests in the Champion lands, all of which were upon record before any steps were taken by the judgment creditors herein to file transcripts of their judgments in Sumter county, where the land in controversy lies. It cannot, therefore, be contended that the Witte claims, as judgments, can have priority to the recorded mortgages.

It is argued, however, with great ingenuity and force, by the counsel for Witte Bros., that by virtue of the operation of the act of 1791, then of force, a statutory lien was acquired by these creditors of Henry W. DeSaussure, the balance of whose claims, after applying whatever was available in the hands of the receiver, J. M. Davis, were to be paid by these tenants in common, defendants here, under the terms of Judge Melton's decree, and out of their interest in the Champion lands in Sumter county. There is no doubt but that in cases of partition by means of sale, as perhaps where contribution in money to make equality was decreed, that this insidious security prevailed, and without attempting to follow or to answer the learned argument of Mr. Haynsworth, it is enough perhaps to say that it has not convinced me. I cannot admit the premises upon which the argu-

ment was based, to wit: that this was ever a case of partition at all. There was no land sought to be made the subject of partition in Kershaw county. There was a scheme for the exchange of the interest of Henry W.'s children in the Sumter lands for what was thought to be a shelter and a farm for them in Kershaw, and this upon certain conditions, it is true in part not complied with, but to which the creditors assented.

Besides, I think the search would not be rewarded with success, however diligently made, for a case where proceedings could be instituted and sustained in one county for partition of lands in another, unless there should at the same time be partitionable lands in the county where the proceedings were instituted, by laying hold of which the court alone could acquire jurisdiction of the lands in another county. This disposes of the main question in the case, to wit, that of the priority of the several claimants, and in the order in which they have been stated herein.

There are, however, some minor questions which have been brought to my attention, and which I will now attempt to dispose of. The first of these is as to the effect of John M. DeSaussure, sr., joining in the Kerngood mortgage. It appears that he was the assignee of the Villipigue judgment by reason of having paid off the same. It further appears that that judgment is the oldest lien upon the property of John M. DeSaussure, jr. Should the land in question sell for its real value, it is hardly possible that this question can be of any practical application in the case, for the plaintiff's debt will probably, in any event, be paid, having priority of the claims of Witte Bros. But in case it becomes important in distributing the proceeds of sale, I hold that John M. DeSaussure, by giving the mortgage to Kerngood, with a covenant of warranty, is estopped from claiming any right to have his judgment against John M., jr., paid to the prejudice of the plaintiff, Kerngood, his mortgagee.

The next question arising is as to the manner of computing the interest upon the Clyburn and Simonds bonds. The terms of the bonds severally relating to the matter of interest are almost identical, and involves the consideration of the distinction between the computation of annual interest and compound interest. The difference, except where the amount is large and the length of

time great, is hardly appreciable; still there is a difference, and the parties raising the question are entitled to have it considered and settled. There is nothing in the terms used to justify or allow the compounding of interest upon either of these bonds—that is to say, there are no stated times up to the time of making the final calculations when interest is to be added to principal, and the sum so found made a new principal. Hence it follows that the computation should be made upon the rule of annual, and not of compound, interest. The terms "until the whole be paid" in the Clyburn bond, and those of like import in the Simonds bond, clearly support the right to the rate of interest stipulated in the bonds respectively until they are paid and satisfied.

There were some other questions raised in argument at the hearing, but not appearing in the pleadings, nor in the shape of exceptions, and I do not know that I apprehend them very clearly. One as to contribution to John M. DeSaussure, sr., by his co-obligors on the Kerngood bond, in the event that he is estopped from claiming upon the Villipigue judgment as against Kerngood's mortgage. The other as to the rights of the several co-tenants (so-called) to homestead exemptions. As to the latter, it is difficult to see under the decisions how as mortgagors they can set up their claims to homestead as against their mortgagees. If such exists, as against the judgments of Witte Brothers, as to whom alone they would be available, their rights must be asserted in the manner prescribed by the act of assembly. They cannot be considered here. "Sufficient unto the day is the evil thereof."

Wherefore it is ordered, adjudged, and decreed as follows:

1. That from the proceeds of sale of the land described in the complaint the master do pay, as heretofore ordered, the taxed cost of this case, and also state and county taxes if any be due, and a fee of one hundred dollars to the referee, W. D. Trantham, esq.

2. That he pay to Mrs. Sarah C. DeSaussure, or her attorney, the sum paid by her as trustee for the lien creditors herein at the forfeiture sale of the said lands, together with lawful interest thereon to the day of payment to her, and that she deliver up her patent to be cancelled by the clerk of this court.

3. That from the balance of purchase money in his hands he

pay to the several lien creditors, in the order set down herein, the several debts due to them, with interest calculated thereon in the manner herein determined, having due regard in such payments to the interests and liabilities of the several obligors.

4. That the surplus (if any be), after paying the claims of Witte Brothers, be held subject to the further order of the court.

5. That in the matter of contribution to the defendant, John M. DeSaussure, sr. (if he have any such right), as well as touching the adjustment of the rights of the co-tenants (so-called) *inter sese,* the parties being all before the court, leave is hereby given to them to apply at the foot of this decree for such orders as they may be advised are necessary and proper.

Witte Bros. appealed upon grounds which were substantially as follows:

1. That his honor erred in not holding that Witte Bros., as assignees of the judgments, were entitled to the payment of their claims to the extent of 4–10 parts, and also 4–28 of one other tenth part of the net proceeds of the sale of the lands ordered to be sold in this case, after the payment of the costs and taxes and referee's fee, and of the amount decreed to be paid to Mrs. S. C. DeSaussure.

2. That his honor erred in not holding that by the decree of Judge Melton the said shares of the said children of H. W. DeSaussure in the said lands were to be transferred to and vest in the other tenants in common, or remaindermen, under the will of Champion only upon the payment by them to the said judgments of the balances which should remain due, after the application thereto of the proceeds of the assets directed in said decree of Judge Melton, to be applied thereto, until which payment they were to have only an inchoate right therein, not to become complete and perfect until the payment by them of the said balances; and that said balances not having been paid, the legal estates and interests of the said children have never been transferred to, or vested in, the other tenants in common, or any of them, and that they derived or acquired under said decree only the equitable right to have title to the said shares of the said children of Henry, upon the payment of the said balances and interest thereon; that

the payment of the said balances was to be the consideration of the transfer or vesting of said shares; and that by the provisions of said decree the right to receive payment of the said consideration was assigned and transferred to the said judgment creditors. And that these appellants, as assignees of the said balances, are entitled to the application to their said claims of the said 4–10 parts and 4–28 of one other tenth part of the net proceeds of the sale of the said lands.

3. That his honor erred in matter of fact in this, that he states that there were no lands in Kershaw county to which the children of Henry W. DeSaussure and the other co-tenants under the will of Champion were entitled, which were sought to be made the subject of partition in the proceedings in the Court of Common Pleas for Kershaw county, referred to in the decree; which statement was erroneous.

4. That his honor erred in not holding that the Court of Common Pleas for Kershaw county had jurisdiction for the partition of the said lands, and that the proceedings in the said cause in Kershaw county were, among other things, for the partition of the said lands among the parties entitled thereto both as remaindermen under the will of Champion and as distributees of Caroline DeSaussure, deceased. And that under the provisions of the act of 1791, the shares of the said children of Henry in the said lands were to vest in the other tenants in common, upon the payment by them of the said balances, which they were ordered in and by the said decree to pay.

5. That his honor erred in his construction of paragraph 7 of Judge Melton's decree, and erred in not holding that said paragraph 7 authorized the execution of a deed of conveyance only of the interest of the then minor, Lloyd C. DeSaussure, in the said lands and personal property and the receipt by his father of such portion of the purchase money as may belong to the said Lloyd; and did not determine or adjudge the interest of the said minor to be one-fifth of the whole of said lands and personalty, nor authorize the sale or conveyance of the shares therein of the children of Henry W. DeSaussure, nor adjudge that those shares had vested in and then belonged to the other co-tenants, but that it only authorized the sale of the interest of the said minor, Lloyd, and that

that interest, as to the shares of said children of Henry, was the right to have title made to them when they should be paid for; and that said paragraph 7 was only a provision for advancing the interests of the minor, Lloyd, without in any way having any reference to or affecting the rights of the children of Henry, or of the said judgment creditors.

W. D. Trantham, administrator, appealed on the following grounds:

1. That his honor erred in decreeing upon the pleadings and evidence "that John M. DeSaussure, by giving the mortgage to Kerngood with a covenant of warranty, is estopped from claiming any right to have his judgment against John M. DeSaussure, jr., paid to the prejudice of the plaintiff, Kerngood, his mortgagee," because no such question was made either in the pleadings or by the evidence, or by way of exception.

2. That his honor erred as matter of law in so decreeing.

3. That his honor erred in not decreeing that Wm. D. Trantham, administrator of J. M. DeSaussure, sr., was entitled to contribution by his co-obligors on the Kerngood bond in the event that he is estopped from claiming upon the Villipigue judgment as against Kerngood's mortgage.

4. That his honor erred in adjudging and decreeing that the master, after paying costs, taxes, &c., "pay to the several lien creditors in the order set down therein the several debts due to them," while no decree is made for the payment of the Villipigue judgment, or any part thereof.

5. That Wm. D. Trantham, administrator, was not, by reason of anything contained in the mortgage of J. M. DeSaussure, sr., and others, to George Alden, estopped from claiming the right to have the judgment of Villipigue against J. M. DeSaussure, jr., paid out of the share of the latter in the lands in preference to all other claimants thereon.

*Messrs. Haynsworth & Cooper*, for Witte Bros.

*Messrs. Moise & Lee*, for Kerngood.

*Messrs. DeSaussure & Son*, for Louis D. DeSaussure.

*Messrs. Blanding & Blanding,* for Trantham, administrator.

*Mr. J. T. Hay,* for Clyburn, receiver.

April 14, 1884.  The opinion of the court was delivered by

MR. JUSTICE McGOWAN.  On May 27, 1877, John M. De-Saussure, sr., Louisa D. Davis, John M. DeSaussure, jr., Sallie D. Davis, Eliza C. DeSaussure, and Lloyd C. DeSaussure, in order to secure their bond for $1,516.65, besides interest, executed and delivered to one George Alden a mortgage of lands thus described: "All that piece or parcel of land situate in the county of Sumter, in said state, containing 2,351 acres, be the same more or less, bounded northwest and north by lands of James M. Davis, northeast and east by the public highway to Stateburg, south by lands of James M. Davis, west by the Wateree River, being lands devised by will of Richard L. Champion to his grandchildren, parties of the first part, and part purchased by the executors for the use of his will," &c.  The bond and mortgage were assigned to Tobias Kerngood, who instituted these proceedings to foreclose the mortgage on the premises aforesaid.

It was discovered that there were other creditors of the mortgagors, devisees under the will aforesaid, who claimed to have older and superior liens upon the said lands, and such claimants were made parties defendant, as follows:

First, William D. Trantham, as administrator of John M. DeSaussure, sr., claimed a judgment, *M. B. Villipigue* v. *John M. DeSaussure, jr.,* entered in Kershaw county, October 10, 1867, for $1,180, besides interest and costs, and in Sumter county, November 30, 1867, and levy made by the sheriff of Sumter on the interest of the defendant in the said premises; which judgment was assigned to John M. DeSaussure, sr., February 22, 1868.

Second, the claim of Ellen Stuart.  Eliza C. DeSaussure, A. B. DeSaussure, and J. M. Davis, executed a bond to Ellen Stuart for $500, due January 1, 1875, secured by mortgage July 13, 1874, executed by Eliza C. DeSaussure, of all her interest (said to be one-fifth) in the said Champion lands.

Third, the Clyburn claim.  M. L. Davis, S. A. Davis, John
M. DeSaussure, jr., E. C. DeSaussure, and L. C. DeSaussure
gave bond to M. D. McDowell, receiver of the Workman estate,
June 1, 1876, for $3,500, secured by mortgage of same date, on
the aforesaid premises, being the same devised to them by the
will of their grandfather, Richard L. Champion.

· Fourth, the Simonds claim.  J. M. Davis, L. D. Davis, L. C.
DeSaussure, Eliza C. DeSaussure, and A. B. DeSaussure gave
bond to Louis D. DeSaussure April 25, 1876, for $2,086.24,
with interest, &c., secured by mortgage of same date, executed
by Eliza C. DeSaussure, Louisa D. Davis, and Lloyd C. DeSaus-
sure, of all their interest in the said premises.  This bond has
been assigned to Andrew Simonds.

Fifth, the claim of Mrs. Sarah E. DeSaussure, under letters
patent conveying to her as lands forfeited to the state for non-
payment of taxes, the Champion lands in Sumter county.  As
appears by the decree, this claim was adjusted at the hearing
below, the claim being abandoned, and the amount of purchase
money paid by Mrs. DeSaussure and the interest thereon to be
refunded to her out of the proceeds of sale.

Sixth, the Kerngood claim.  This is the claim for $1,516.65
secured by mortgage of the same premises first stated, upon
which claim these proceedings were instituted.  The mortgage
bears date May 27, 1877, includes a warranty of the premises
mortgaged, and was signed also by John M. DeSaussure, sr.

Seventh, the claim of Witte Brothers.  This consists of the
aggregate balances of sundry judgments originally obtained by
James D. Matheson, James D. Kirkpatrick, administrator, Pris-
cilla B. Perkins, executrix, and Mary E. Shaw, administratrix,
against the executrix of Henry W. DeSaussure, deceased, who
was one of the grandchildren of R. L. Champion aforesaid;
which balances by assignments have become the property of
Witte Bros.  By a family arrangement in regard to the afore-
said Champion lands, among the devisees thereof (which will be
more particularly referred to hereafter), these judgments were
cancelled as against the estate of Henry W. DeSaussure, de-
ceased, and the payment of any balances thereon, was assumed
by the five living grandchildren of the said Champion, the

obligors in the Kerngood mortgage, Louisa D. Davis, Sallie
D. Davis, John M. DeSaussure, jr., Eliza C. DeSaussure, and
Lloyd C. DeSaussure. This undertaking was embodied in a
consent decree in Kershaw county of date November 12, 1870,
but said decree for said balances could not be enrolled at the
time, but lately the said balances still unpaid were ascertained
and judgments rendered thereon in Kershaw county, February
15, 1882, and transcripts of said judgments entered in the office
of the clerk for Sumter county, March 6, 1883; which would
give Witte Bros. the last lien upon the said Champion lands.

But they claim that the original arrangement embodied in the
consent decree of November 12, 1870, gave them a lien from
that date on said Champion lands, at least to the extent of the
interest of the children of H. W. DeSaussure, deceased, including
both the share proper of their father, Henry, and their interest
in the portion of their deceased aunt, Caroline DeSaussure.
There is no doubt that the interest of the said devisees in the
Champion lands and all other property they may have, is liable
for the Witte claim as a debt assumed by them; but it is earn-
estly denied that they gave any lien for its payment, or that any
was involved in the aforesaid transaction, even as to the share of
the children of H. W. DeSaussure, which they thereby acquired,
so far as the lands now in controversy are concerned.

The issue simply as to priority is the principal question in the
case, and we will now proceed to consider it. The facts are
somewhat complicated, and in order to make them intelligible,
we will go back a little. Richard Lloyd Champion, late of Ker-
shaw county, departed this life November 13, 1813, seized and
possessed of a large estate, and leaving a will, of which Benja-
min Bineham was the sole qualified executor. By the fourth
clause, the testator devised and bequeathed as follows: "I will
and bequeath unto my said friends, Duncan McRae, Alexander
Matheson, Abraham Blanding, and Benjamin Bineham, all the
rest and residue of my estate both real and personal, to them,
their heirs, executors, administrators, and assigns forever; in
trust and confidence, and subject to the uses, limitations, and
restrictions hereinafter mentioned and expressed; that is to say
(after the payment of my debts), that they shall stand seized and

possessed of the same to and for the sole use, benefit, and behoof of my beloved daughter, Eliza Hester Champion, for and during the term of her natural life, and no longer, without being subject to the debts, contracts, or disposal of any person with whom she may at any time intermarry; and from and immediately after the death of my said daughter, Eliza Hester Champion, that then they, the said executors, &c., shall stand seized and possessed of the same in trust to and for the sole use, benefit, and behoof of the heirs of the body of my said daughter, who may be living at the time of her death, share and share alike," with some ulterior limitations, &c.

The lands referred to in this case as the "Champion lands in Sumter county," passed under and were devised by the said fourth clause of this will. The said Eliza Hester survived her father, married John M. DeSaussure, Esq., and died March 11, 1864, leaving her surviving, her said husband, and six children, viz., Mary Louisa (who married James M. Davis), John M. DeSaussure, jr., Eliza C. DeSaussure, Sarah Amelia (who married Junius Davis), Lloyd C. DeSaussure, and Caroline E. DeSaussure (who departed this life August 12, 1864, intestate and unmarried), and four grandchildren, viz., George R. DeSaussure, John M. DeSaussure, Douglass B. DeSaussure, and Champion DeSaussure, children of Henry W. DeSaussure, then deceased. The Champion lands have never been divided among the devisees, except as to the interest therein of the children of the aforesaid predeceased son, Henry W. DeSaussure, in respect to which this contention has arisen.

Henry W. DeSaussure was the eldest child of the said Eliza Hester, and having married in her life-time, he was settled off partly by his father, John M. DeSaussure, out of his own means, but for the most part out of the property of the Champion estate. The plantation hereinafter known as the "upper plantation," near Camden, in Kershaw county, was purchased and conveyed to him directly by the vendor, and was stocked by negro slaves. At the time he was thus provided for, December 30, 1856, the property which went into his possession, lands and slaves, were described and valued, and he covenanted as follows: "I agree with my father and mother and as representing my brothers and

sisters, that if it be necessary to bring the said lands and negroes into common valuation and calculation on the death of my father or mother, or either of them, in order to equalize the shares of my brothers and sisters and myself in all or either of the estates of my father or mother, or in the estates devised by my grandfather, Richard L. Champion, to the children of my mother in remainder, I will bring the value of said lands and negroes into such common valuation and calculation, and will hold the said lands and negroes as my own and will account for their value," &c.

Henry W. DeSaussure afterwards went into the Confederate army, and fell at Frazier's farm, near Malvern Hill, in Virginia, on June 30, 1862, leaving a widow, Mary R. DeSaussure, and the four children above named. He left a will, of which his widow was sole executrix, but its provisions are unimportant in this case. The said Henry W. DeSaussure left debts, and the creditors, James D. Matheson, James D. Kirkpatrick, administrator, Priscilla B. Perkins, executrix, and Mary E. Shaw, administratrix, having sued the executrix, Mary R., recovered judgments respectively, and levied the "upper plantation" and all the other property of the testator; and James P. Boswell, the sheriff of Kershaw county, was about to sell the same, when, in December, 1869, the executrix, Mary R., for herself and her aforesaid children, filed a bill in Kershaw county, entitled "*Mary R. DeSaussure et al.*, v. *James P. Boswell et al.*," making the sheriff and creditors parties, as also the devisees under Champion's will, and praying for injunction, to marshal the assets of the estate, for dower, and "for partition of the estate derived by the children of the said Eliza Hester DeSaussure, under the will of the said R. L. Champion, with the accumulations thereof," &c.

In this proceeding Judge Melton, on November 12, 1870, made a consent decree, the construction and legal effect of which are involved in this case. We cannot encumber this statement, already too long, by reciting it at length. It will be enough to say that it ordered certain property of the testator to be sold, appointed a receiver, gave the widow dower, and as to the "upper plantation," provided as follows: "1. It is ordered, adjudged, and decreed, that the 'upper plantation' of the late Henry W. De-Saussure, situate * * be assigned in severalty in fee simple to

the complainants, George R. DeSaussure, Douglass B. DeSaussure, John M. DeSaussure, and R. Champion DeSaussure, as tenants in common, to them and their heirs and assigns for ever, charged, nevertheless, with the payment to the defendant, Louis D. DeSaussure, of the amount of his claim (contracted by the executrix after the death of H. W. DeSaussure) * * * and the said 'upper plantation' above described shall be taken and deemed to be in full discharge and satisfaction of the portions, shares, and interests of the said children, heirs and devisees of the said H. W. DeSaussure, deceased, in the estate of their said father, and in the estate of their grandmother, Eliza Hester DeSaussure, deceased, and in the trust estate devised to them by the will of Richard L. Champion, or conveyed in trust to Benjamin Bineham, his executor, &c.     *     *     *

"6. It is further ordered, that the said James M. Davis, receiver, as aforesaid, after applying the assets remaining in his hands, necessary to make the payments to the said Mary R. DeSaussure, here before directed, do pay therefrom the costs of this suit, &c., and apply the balance of said assets, when collected, to the payment of the demands of the other creditors of the estate of the said Henry W. DeSaussure *pro rata*, to wit: the said James D. Matheson, James D. Kirkpatrick, Priscilla B. Perkins, and Mary E. Shaw, and that the judgments at law upon the said claims be satisfied before the judgment creditors thereof receive any benefit from this decree. It is further ordered, that the defendants, Mary Louisa Davis, Eliza C. DeSaussure, John M. DeSaussure, jr., Sarah Amelia Davis, and Lloyd C. DeSaussure, do pay to the said creditors, respectively, whatever may remain due to them on their said claims after the application thereto of the proceeds of the said assets in the hands of the said James M. Davis, receiver as aforesaid, as hereinbefore directed, &c.

"7. It is further ordered that whenever the said Mary Louisa Davis, Eliza C. DeSaussure, Sarah Amelia Davis, and John M. DeSaussure, jr., the adult children of Eliza Hester DeSaussure, and remaindermen with Lloyd C. DeSaussure, under the will of their grandfather, the said R. L. Champion, may deem it advisable to sell the lands and personalty passing under said will, and also the lands conveyed in trust to Benjamin

Bineham, executor of the said R. L. Champion, as described in the bill, and shall enter into a contract for the sale of the same or any part thereof, that the said John M. DeSaussure, the father and guardian *ad litem* of the said minor defendant, Lloyd C. De-Saussure, be authorized and required to execute to the purchaser or purchasers thereof a deed of conveyance of the interest of the said Lloyd C. DeSaussure in the said lands and personal property, and that he receive and receipt for such portion of the purchase money as may belong to the said Lloyd C. DeSaussure, to wit: one-fifth portion thereof, and hold the same subject to the further orders of this court or until a general guardian for the said Lloyd C. DeSaussure shall be duly appointed," &c.

As before stated, the balances of the judgments have lately been ascertained and confirmed by the court, and the question now is, whether Witte Bros., owners of these balances, having given up their liens upon the "upper plantation" and the other property of Henry's estate and in lieu thereof taken the decree for the amount against the aforesaid living children of Eliza Hester, must be regarded as holding them as simple debtors without security, or as having a lien from the date of the decree upon their property, at least to the extent of the share of Henry's children, assigned to them by the same decree which required them to pay the debt. The Circuit judge held that the effect of the Circuit decree was to make them responsible simply as debtors for the balances which, after applying the assets of the estate, should finally be due upon the judgments; but gave no lien on the property of those adjudged to pay, not even on the share of Henry's children, assigned to them by the decree. He also held that W. D. Tranthàm, as administrator of the estate of John M. DeSaussure, sr., who was one of those who executed the Kerngood mortgage containing a covenant of warranty of the premises embraced, was estopped from claiming any right to have the Villipigue judgment against John M. DeSaussure, jr., paid to the prejudice of the plaintiff, Kerngood, his mortgagee; and after providing for costs, fee of the referee, and the reimbursement of Mrs. Sarah C. DeSaussure for money paid at the forfeiture sale of the lands for taxes, fixed, in effect, the priorities of the parties as follows: 1. The claim of Ellen Stuart; 2, the claim of Clyburn, receiver;

3, the Simonds claim; 4, the Kerngood claim; 5, the Trantham claim on the Villipigue judgment; and 6, the claim of Witte Bros.

From this decree, Witte Bros. and W. D. Trantham, administrator, appeal to this court.· The exceptions are long, and need not be stated here, as they are in the brief.

First, as to the claim of Witte Bros. The judgments afterwards assigned to them had liens on all the property of Henry W., which the consent decree cancelled, and adjudged that the living brothers and sisters of Henry W. should pay "whatever may remain due to them (the creditors) on their claims after the application thereto of the proceeds of the assets in the hands of the receiver," &c. Although this was a consent decree, it was a present judgment. It was not less a judgment of the court because it was in conformity to the wishes of the parties. The aggregate amount of the judgments was not stated in terms, but that was known when the judgments were marked satisfied, and it is not entirely clear that the decree could not have been enrolled at that time, subject to be credited as successive payments were made by the receiver. If that had been done and execution issued and levied as required by the code, that would have given a lien upon all the interests in the Champion lands in Sumter or elsewhere.

We incline to think that such was the intention of the parties and of Judge Melton's decree. The creditors had a lien upon the property of Henry W., which in all probability, without regard to the claim of the co-tenants for advancements and a money equalization, would have produced payment, as the legal title to the "upper plantation" had been made to Henry W. in his life-time. In order, however, to facilitate a judicious family arrangement, they yielded their lien, and in lieu thereof consented to take the judgment aforesaid against the substituted parties, and it is hardly to be supposed they would have done so without taking a new lien upon the new parties. But be that as it may, there was the difficulty that the aggregate amount was not stated in the decree, and it could not be then foreseen what the exact balance would be; and on that account, probably, the judgment was not enrolled or execution issued in Sumter county until March, 1883. So that, although there was a decree against

the substituted parties, it gave no lien upon their own proper shares in the lands until that time (March, 1883). In the meantime, the co-tenants aforesaid who were adjudged to pay the judgments had encumbered their own interests in the lands by the mortgages before mentioned, and the question now is whether the provisions of the consent decree vested in them such absolute title to the interest of Henry's children as to pass it also under these intermediate incumbrances, although they had not paid the aforesaid balances, which at the time of the relinquishment of that interest they were ordered to pay.

Witte Bros. insist that the bill in the case of *Mary R. De-Saussure et al.* v. *Boswell, Sheriff, et al.*, in Kershaw county, was, among other things, *for partition* among the tenants in common of the Champion estate; and that the interest of Henry's children in the lands, being relinquished to the other co-tenants upon their paying the judgments aforesaid as the consideration of that relinquishment, the act of 1791 gave the creditors a lien on said interest so relinquished to secure said balances. To this it is objected that the bill was not for partition of *intestate* property, and that it was filed in Kershaw county, where there was really no property of any value belonging to the tenants in common; but it all lay in Sumter county, and that for these reasons this is not a case for the application of the act of 1791. It is true that the same decree which made the relinquishment of the interest of Henry's children also ordered those to whom the relinquishment was made to pay the judgments, in order to disencumber the "upper plantation" so as to allow it to be taken by Henry's children in exchange for their interest in the other lands, and to that extent the proceeding was substantially a partition of the Champion property; at least to the extent of eliminating therefrom the interest of Henry's children. It is also true that the act of 1791 gave a lien for the purchase money of an intestate's land sold for partition, and by fair construction also upon lands assigned for sums of money necessary to produce equality of partition. See *McQueen* v. *Fletcher*, 4 *Rich. Eq.*, 158; *Burris* v. *Gooch*, 5 *Rich.*, 1. But we do not consider it necessary to decide whether the bill was for the partition of such property as was contemplated by the act, or whether lands in

Sumter county could be legally partitioned by this proceeding in Kershaw county, or whether the technical statutory lien under the act arose out of the proceedings, in favor of the creditors thereby adjudged to be paid.

A consent decree is in effect the agreement of the parties concerned, and we think the rights of the parties must be determined, not by reference to the statute of 1791, but by the construction of Judge Melton's decree. What was the object and intention of that decree? Taking all of its parts together and considering it as a whole, we cannot resist the conclusion that it was intended to embody and carry into effect a tripartite agreement as follows: First, the children of Henry were willing to take the "upper plantation" in full of their share of the Champion estate, if it could be disencumbered. Second, the other co-tenants, in order to accomplish this to the relief of the other lands, agreed to disencumber it by paying the judgments. And third, the creditors consented to lift their liens from the "upper plantation" upon the other co-tenants agreeing to pay the balance of their judgments.

The children of Eliza Hester had no connection with the proceedings to settle the affairs of Henry's estate, except in so far as they touched the Champion property. The title to the "upper plantation" had been made to Henry W. and his heirs, and therefore, as property, it was no part of the Champion estate, although the estate of Henry might be liable to account for its value; and it seems to us that the logical and inevitable conclusion must be that the undertaking to disencumber the "upper plantation" (by paying the judgments) was really the consideration of the relinquishment by Henry's children of their share in the Sumter lands. Lifting the judgments was in fact the basis of the whole arrangement, without which nothing could have been done, as appears from the fact that the creditors could derive no benefit from the decree until their judgments were marked satisfied. The agreement to pay the judgments was the very thing that enabled the children of Henry to take the "upper plantation" in exchange for their interest in the Sumter lands.

It is true that the decree does not expressly declare that one was the consideration of the other, but the transaction shows it.

If the payment of the judgments was not expressly stated to be a condition precedent to the vesting absolutely of the interest of Henry's children, both were connected with the same subject-matter, were counterparts of the same scheme, declared by the same consent decree or mutual covenant, and, in our judgment, must be considered as mutual and dependant provisions. Therefore only an equity to the interest of Henry's children passed to the other co-tenants, which they could only mortgage subject to the payment of the judgments to the creditors, who had relieved the "upper plantation" for Henry's children, and thereby become entitled to all their rights.

It is well settled that a vendor of lands, or his assignee, where he has not executed title to the purchaser, but the contract is still executory, has a lien upon the lands sold for the purchase money and may have specific performance of the contract, and the land sold in discharge of it, precisely as if he had executed titles and taken back a purchase money mortgage. *Gregorie* v. *Bulow. Rich. Eq. Cas.*, 244; *Buckner* v. *Railroad Company*, 7 *S. C.*, 328; *Walker & Trenholm*, v. *Kee*, 14 *Id.*, 142; *Herbemont* v. *Sharp*, 2 *McC.*, 264. In the last case cited, it is said that "in no sense can a sale of lands be regarded as complete until the purchaser has paid his money and the seller has conveyed the land."

We do not think there is anything in the last paragraph of the consent decree which conflicts with this view. One of the co-tenants, Lloyd C. DeSaussure, was a minor, and in order to enable the parties to meet promptly any advantageous offer that might be made to purchase the Champion property, John M. De-Saussure, sr., the father of the said minor, was authorized to act for him and to receive his part of the purchase money, until he had a regular guardian appointed. This was in no way inconsistent with the general scheme of the decree by which the co-tenants were to pay the judgments. That was a present obligation, and any rights conferred upon the said minor must be assumed to have been given subject to that obligation, and not in such way as to defeat the whole scheme before arranged. Besides, it is clear that the privilege conferred upon the said minor had no special reference to the interest of Henry's children, but reached to the minor's interest in the whole of the Champion lands.

Nor do we think that this secret lien, as it is styled, could work a hardship upon others without notice. No one dealing with one tenant in common had the right to suppose that he could encumber the share of another tenant in common; and if he desired information on the subject, he could find it nowhere but in the decree, which would have disclosed the fact that the "upper plantation" had been assigned to the children of Henry in full discharge and satisfaction of their shares in the trust estate devised to them, but at the same time it would have disclosed the other facts, that the living co-tenants were directed to pay certain balances of judgments, and that there was no change of title expressly made as to the interest of Henry's children in the Sumter lands. We are constrained to hold that there is a lien upon the share of Henry's children in the Sumter lands, to secure the balance of the judgments aforesaid, commencing November 12, 1870, and upon the interest proper of all the other tenants in common from March, 1883, when the judgments were renewed and lodged in Sumter county.

What, then, is the amount of that share, so far as the creditors are concerned? If this were an original question, there could be little doubt about it. The lands were a part of the estate of Champion, and fell under the fourth clause of his will, which devised them to trustees for the sole and separate use of his daughter, Eliza Hester, during her life, and "from and immediately after her death, that then the said trustees shall stand seized and possessed of the same in trust to and for the sole use, benefit, and behoof of the *heirs of the body of my said daughter who may be living at the time of her death, share and share alike.*" Eliza Hester died March 11, 1864, leaving alive six children, *viz.:* Mrs. Mary L. Davis, John M. DeSaussure, jr., Eliza C. DeSaussure, Mrs. Sarah A. Davis, Lloyd C. DeSaussure, and Caroline DeSaussure (who afterwards died August 12, 1864, unmarried and intestate), and four grandchildren, *viz.:* George R., Douglass, Blanding, and Champion DeSaussure, children of a predeceased son, Henry W. DeSaussure.

Assuming that the grandchildren as well as the children were "heirs of her body then living," the question is made whether they took *per stirpes* through their father who was not living at

the time of the death of the life tenant, or *per capita* "share and share alike" with the children, making ten instead of seven original shares. Although described as "heirs," the remaindermen did not take as "heirs" by descent, but as purchasers under the will. In such cases, after much discussion and some difference of opinion, it seems to have been settled as a rule of construction, that "wherever, by the terms of description, in a devise or grant, resort must be had to the statute of distributions for the purpose of ascertaining the objects of the gift, resort must also be had to the statute to ascertain the proportions in which the donees shall take, unless the instrument making the gift indicates the intention of the donor that a different rule of distribution shall be pursued," &c. *Campbell* v. *Wiggins, Rice Ch.*, 10; *Lemacks* v. *Glover*, 1 *Rich. Eq.*, 141; *Rochell* v. *Tompkins*, 1 *Strob. Eq.*, 114; *Collier* v. *Collier*, 3 *Rich. Eq.*, 555.

The terms of the devise here being "to heirs of the body," imposed the necessity of referring to the statute to ascertain who were such "heirs," and if the devise had stopped there, the children of Henry W. would undoubtedly have taken in the manner prescribed by the statute. That is to say, they would have represented their father and taken together *per stirpes* his share—one-seventh part of the estate, besides their distributive portion of the share of their deceased aunt, Caroline. But the superadded words, "share and share alike," imply equality of division, and we think made the exceptional case "when the instrument creating the gift indicates the intention of the donor." *Templeton* v. *Walker*, 3 *Rich. Eq.*, 543; *Allen* v. *Allen*, 13 *S. C.*, 531. This latter case well expresses it: "Thus where, as in *Freeman* v. *Knight*, 2 *Ired. Eq.*, 72, the testator directed that certain personal property 'should be sold and the proceeds equally divided between my legal heirs,' it was held that though a resort to the statute was necessary, in order to ascertain who were the persons embraced in the class to whom the bequest was made, there was no such necessity to refer to the statute to ascertain the mode of distribution because the testator had himself determined that, by directing an equal division, and hence the proceeds of sale should be distributed amongst the widow and children and the children of pre-

deceased children *per capita* and not *per stirpes.*" We think that the same must be said here of the words "share and share alike."

But it is urged that the question as between these parties is *res adjudicata;* that it was adjudged in the Kershaw case of Mary R. DeSaussure and her children against Boswell, sheriff, and others, before referred to, that the children of Henry W. represented their father, and took among them only one-seventh part of the estate, and their distributive part of their aunt Caroline's share; and that those creditors who were parties to that proceeding and agreed to take that interest, cannot go back to the will, and under a strict construction thereof now claim more. It seems to us that there is force in this view.. It is true that the precise point was not formally decided by the consent decree; but at that time such was manifestly the understanding of all the parties, including the counsel engaged as well as the judge who pronounced the decree. The bill filed in behalf of the children of Henry W. in setting out the parties entitled to the Champion property, stated their claims as follows: "Your infant orators who are entitled to take among them the one-sixth part of said estate, and the other parties in interest each one-sixth."

This statement did not discriminate nicely as to their interest in the estate of their deceased aunt, Caroline; but regarding her separate share as simply absorbed in the general estate, did distinctly claim *per stirpes* through their deceased father. And the consent decree itself, which only put in force the covenants of the parties, recognized the same construction. In assigning the "upper plantation" to the children of Henry, "to be taken and deemed to be in full discharge and satisfaction of the portion, share, and interest of the said children in the Champion estate," the decree incidentally refers to what was the share of one of the remaindermen, viz., the minor, Lloyd C. DeSaussure, after the interest of Henry's children had been eliminated, and declares it to be "one-fifth portion thereof."

In considering the rights of the creditors, we have construed that consent decree according to what we conceived to be its object and intent taken as a whole; and we are of opinion that in reference to the rights of the remaindermen it should be construed in the same manner, and that the creditors, who were par-

ties and consented to the arrangement on that basis, should be held to stand by it, even if there was an honest mistake of law involved in it. *Keitt* v. *Andrews,* 4 *Rich. Eq.,* 354; *Reese* v. *Holmes,* 5 *Rich. Eq.,* 531; *Cuningham* v. *Cuningham,* 20 *S. C.,* 317. "One who accepts the terms of a contract must accept the contract as a whole. He cannot accept part and reject the rest." *Big. Est.,* 511. Thus, considering the creditors estopped from changing the elements of the arrangement as understood and acted on by all parties at the time, the aggregate share of Henry's children must be taken to be as follows: as remainder-men under the will representing their father, and taking one-seventh of the whole estate; and as distributees of their aunt Caroline (counting her father as distributee), one-seventh of another original seventh.

This brings us to the question of estoppel as to the Villipigue judgment, which is not free from difficulty. John M. DeSaus-sure, sr., became the owner by assignment of the Villipigue judgment against John M. DeSaussure, jr., which, as appeared before, is the oldest lien on the undivided interest of the said John M., jr. Afterwards, John M., the father, joined in the bond and mort-gage to Alden, assigned to Kerngood. This mortgage was also executed by John M., jr., along with his brothers and sisters. That mortgage contained a warranty in these words: "And the parties do hereby bind themselves, their heirs, executors, and administrators, to warrant and forever defend all and singular the said premises unto the said George Alden, heirs, and assigns, for and against his heirs, executors, administrators, and assigns, law-fully claiming, or to claim, the same or any part thereof." And it is now claimed that it was error on the part of the Circuit judge to hold that W. D. Trantham, as administrator of John M. DeSaussure, sr., is estopped from setting up the judgment to the prejudice of the rights of Kerngood.

Several preliminary objections are made to the alleged war-ranty in the Kerngood mortgage. It is said that the words used did not clearly express a general warranty of the premises. There seems to have been some transposition of its different parts, as if a mistake had been made in filling blanks; but there can be no serious doubt that the parties intended to execute a

general warranty in the usual form. It is also suggested that the question of estoppel was not made "either in the pleadings or by the evidence or by way of exception." The complaint did allege that the judgment had been "paid," and the peculiar defence of estoppel was one of law, and arose out of the facts proved. In settling the priorities, it was necessary to decide it.

Then what was the effect of the warranty in the Kerngood mortgage? If it had been an absolute conveyance of the premises to Alden, with a general warranty, which has been held to include several covenants, and among them one of quiet enjoyment, and that of free from all encumbrances, it is plain the warranty would have been broken by the existence of an outstanding judgment having a lien upon the premises, and the covenantee might have recovered against his covenantors, or their respective representatives, the amount of damages caused to him by said encumbrance. *Jeter* v. *Glenn*, 9 *Rich.*, 380, and authorities. We do not see why the same consequence should not follow from a warranty in the mortgage, when it is proposed to foreclose it and claim the land to pay the debt for which it was a security. This consequence results simply from the existence of the encumbrance, without regard to who may be the owner of it.

In such case if the incumbrance is owned and enforced by a stranger, the only remedy for the mortgagee would be an action at law for damages upon the broken covenant of warranty. But when it happens that such incumbrance is owned by the warrantor himself or his representative, a court of equity seizes hold of that coincidence, and, in order to prevent circuity of action, declares an estoppel. "Covenants for quiet enjoyment in themselves are said to be as effectual by way of estoppel as words of conveyance. The doctrine seems to rest upon the same grounds as that concerning the estoppel of a grantor in fee with warranty, to set up an outstanding title against his grantee, namely, that of prevention of circuity of actions. Should the grantor, having acquired a paramount title, attempt to disturb and regain the possession of his grantee, the latter would be entitled to set up the covenant for quiet possession by way of rebutter; and this, it would seem, would as effectually operate against the grantor as if he had made a direct conveyance of the land." *Big. Est.*, 304.

A mortgagor by a mortgage containing the usual covenants of seizin and warranty is estopped to deny the title of the mortgagee. *Jones Mort.*, § 662.

We do not think it was error to hold that Trantham, the administrator of John M. DeSaussure, sr., is estopped from claiming any right to have the Villipigue judgment paid to the prejudice of the plaintiff Kerngood, his mortgagee. But it seems to us that it was error to remove that judgment from its place in the line of priorities and place it behind Kerngood, thus pushing up into its place the next succeeding liens in their order. We cannot see that the estoppel as to Kerngood should be made to enure to the benefit of the intermediate mortgagees, who took their liens subject to that of the judgment and prior mortgages duly recorded, and cannot in any way be injured by the covenant of warranty executed subsequently. In order that the intermediate mortgagees may simply hold their places unaffected by the warranty in the Kerngood mortgage, it seems to us that the Villipigue judgment should keep its place at the head of the line of priorities; but that the estoppel should be affected by regarding as assigned to Kerngood so much of the Villipigue judgment as may be necessary to reimburse him for the damage he may sustain by the enforcement of the judgment. If Kerngood should be paid by the sale of the property, then he has suffered no damage, and the administrator, Trantham, will be entitled to the proceeds of the judgment. If he is not paid, Kerngood will be entitled to the proceeds of the judgment, or so much thereof as may be necessary to indemnify him for damage caused thereby.

We conclude, that after paying the expenses and Mrs. Sarah E. DeSaussure, as provided by the Circuit decree, the priorities in respect to date will stand as follows: I. The Villipigue judgment, with the rights of Kerngood in regard thereto, as herein stated. II. The claim of Witte Bros., as to the share of Henry's children in the Sumter lands, as herein explained and limited. III. The Ellen Stuart claim, as set down in the decree. IV. The Clyburn claim as stated. V. The Simonds claim as stated. VI. The Kerngood claim, with rights in the Villipigue judgment, as herein stated. VII. The remainder of the claim of Witte Bros.

The judgment of this court is, that the judgment of the Circuit

Court be modified in conformity with the conclusions herein announced, and in all other respects be affirmed.